UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KYLE B. RICHARDS,

    Plaintiff,                                       Case No. 12-14148

    v.                                               Hon. Sean F. Cox
                                                    Mag. Judge Laurie J. Michelson

KEN McKEE, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [24]**

Plaintiff Kyle B. Richards, a Michigan state prisoner presently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, brought this lawsuit against 50 defendants alleging violations of 42 U.S.C. § 1983 and state law. (Dkt. 1, Compl.) All that now remains are the claims against the Macomb County Jail Defendants: Scott Campau, Louis, and Klien.[1] All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 14.) Currently before the Court for report and recommendation is Plaintiff's Motion for Summary Judgment against Defendant Campau. (Dkt. 24.) For the following reasons, the Court RECOMMENDS that the motion be DENIED.

**I. REPORT**

    **A. Background**

The following facts and allegations relevant to Plaintiff's claims against Defendant Campau are taken from the verified Complaint,[2] two declarations by Plaintiff (Dkt. 20; Dkt. 26

---

1    Scott Campau is incorrectly named in the Complaint and Motion as "Capau." Despite several attempts by the U.S. Marshal Service, Louis and Klien have not yet been served because they are no longer employed at Macomb County Jail. (Dkt. 41.)

2    A verified complaint (one that is signed under penalty of perjury pursuant to 28 U.S.C. § 1746) carries the same weight as would an affidavit for the purposes of summary judgment. *See*

at Pg ID 161), the declarations of inmates Nicholas Tyrone Anthony (Dkt. 26 at Pg ID 165) and Richard Smith (Dkt. 26 at Pg ID 167) filed by Plaintiff, and Campau's Affidavit Detailing Need for Discovery (Dkt. 31-2).

Plaintiff was arrested for bank robbery on January 7, 2011. (Compl. at Pg ID 20.) He was incarcerated at Macomb County Jail ("MCJ") from January 2011 to August 2011, when he was transferred to prison. (Compl. at Pg ID 13.) Defendant Campau was a correctional deputy at MCJ. (Compl. at Pg ID 4; Campau Aff. at ¶ 1.) These facts do not appear to be in dispute.

Plaintiff alleges that "Officer Campau . . . frequently worked" in Plaintiff's unit. (Compl. at Pg ID 14.) It is not clear whether Campau disputes this.

The following allegations are disputed.

Plaintiff alleges that "already having a poor reputation with police, [he] had incurred mistreatment as soon as [he] arrived" at MCJ. (Compl. at Pg ID 13.) Plaintiff says that Campau and other officers "began encouraging other inmates to har[]ass [him] into giving an open confession to a past bank robbery [he] was charged with." (Dkt. 20, Richards Decl. at Pg ID 131.) He alleges that he continued to endure harassment and ill treatment by inmates throughout his eight months at MCJ. (*Id.* at Pg ID 13.) According to Plaintiff, "[o]ther inmates in Macomb County Jail were verbally and psychologically harassing" him, and "[e]ncouraged by Officers, inmates were even spitting and urinating in [his] food." (*Id.* at Pg ID 14.)

More specifically, Plaintiff alleges that inmates Eric Schaner and Frank Richardson "were on many occasions, in plain sight, spitting and urinating in the plaintiffs meal tray." (Dkt.

---

*El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

2

26, Richards Decl. at Pg ID 161; *see also* Dkt. 20, Richards Decl. at Pg ID 131.) He alleges that this occurred "every day" between January and August 2011. (*Id.*) Inmate Anthony avers that he resided in the cell next to Richards' from February to August 2011, and witnessed other prisoners spitting and urinating in Richards' meal trays. (Anthony Decl. at Pg ID 165.)

Other inmates were also stealing food off his tray before delivering it, according to Plaintiff. (Dkt. 20, Richards Decl. at Pg ID 131.) This occurred "for nearly the entire year," including specifically on May 1, 6, and 9, 2011, and July 2 and 18, 2011. (*Id.*)

Plaintiff alleges that he raised the issue of inmates spiting and urinating in his meal trays with Campau on February 16 and 20, 2011, and on March 8, 2011. (Dkt. 26, Richards Decl. at Pg ID 162.) He says he told Campau "what was happening," and Campau "stated 'I do not want to get involved.'" (*Id.* at Pg ID 161.) Plaintiff further alleges that Campau "thought the issue was funny." (*Id.* at Pg ID 161.) On March 8, according to Plaintiff, Campau "responded sarcastically stating; 'spit[ is] good for you', and; 'spit has prot[ei]n'." (*Id.*) According to inmate Anthony, on February 16 and 20, 2011, and March 8, 2011, Campau and another officer entered the unit "laughing at Richards, saying; 'how does spit taste', 'spit and piss have prot[ei]n' and other derogatory comments." (Anthony Decl. at Pg ID 165.) On March 14, 2011, Plaintiff says that Campau "began making jokes, such as; 'How does piss taste?'" (Dkt. 26, Richards Decl. at Pg ID 162.) Inmate Smith, who says he was in another cell in Richards' unit, declares that "for about 3 months straight, inmates in jail, were spitting and pissing in Richards['] food," and he heard Campau say "'how does piss taste'" to Richards. (Smith Decl. at Pg ID 167.)

According to Plaintiff, Campau "made a strenuous effort to provoke and antagonize

3

inmates into harassing the Plaintiff" throughout the Plaintiff's time at MCJ. (Dkt. 26, Richards Decl. at Pg ID 162.) Plaintiff says that on April 2, 2011, Campau "passed a tray around the entire unit," to four inmates including Schaner, "having them spit and urinate on the tray," and "then delivered the same tray to Plaintiff[']s cell." (*Id.*) Anthony also says that on April 2, 2011, he saw Campau "pass a tray around to other inmates who spit and urinated on the tray," and Campau "then delivered the tray to Richards." (Anthony Decl. at Pg ID 165–66.)

Plaintiff alleges that on May 9, 2011, he "requested to see a nurse due to stomach pains, and was denied." (Dkt. 20, Richards Decl. at Pg ID 131.)

On June 1, 2011, Plaintiff says Campau "refused to call a nurse" and "the plaintiff was left in his cell for 3 days with his vomit" when he became ill "after consuming contaminate[d] food with spit and urine." (Dkt. 26, Richards Decl. at Pg ID 162.) Anthony similarly declares that on June 1, 2011, after "Richards vomited 3 times after consuming food contaminated with spit and urine," Campau and another officer "left Richards in his cell for 3 days without medical attention." (Anthony Decl. at Pg ID 166.)

On July 3 and 4, 2011, Plaintiff says that Campau stood by laughing "while other inmates began assaulting Plaintiff with spit and urine, through the door slot" of his cell. (Dkt. 26, Richards Decl. at Pg ID 162.) Anthony says that on July 4, 2011, Campau entered the unit with another officer and "began laughing as other inmates began assaulting Richards with spit and urine." (Anthony Decl. at Pg ID 166.) And Smith declares that on July 4, 2011, he witnessed Campau and another officer enter the unit and "laugh at Richards, while inmate Richardson [] spit on Richards." (Smith Decl. at Pg ID 167.)

4

Plaintiff also says he "specifically told Officer Ca[m]pau, that inmates smoking on the unit (crack and marijuana), was making me ill, and he told me; 'talk to other inmates on the unit, not us.'" (Compl. at Pg ID 15.)

Plaintiff alleges that Campau, among other defendants, "had a sincere respons[i]bility and duty to the plaintiff, and either neglected or abused [his] authority, causing the plaintiff to incur[] harm, starvation, and even torture." (Compl. at Pg ID 24.) Plaintiff states that Campau and other officers "'knew' of the conditions Plaintiff suffered, and neglected to correct these conditions," and that they "encouraged, permitted, and participated in these assaults." (Dkt. 26, Richards Decl. at Pg ID 164.)

Plaintiff alleges that he is a "'vulnerable adult' having been diagnosed with autism in 2004." (Dkt. 26, Richards Decl. at Pg ID 164.) He alleges that "[t]he impact of this cruelty has caused Plaintiff extensive psychological damage, including frequent vom[]it[]ing and lethargy." (*Id.*) He alleges that he "was subject to verbal assault and abuse, and suffered emotional, psychological, and physical injury." (Dkt. 20, Richards Decl. at Pg ID 131.)

Campau states that the allegations in the complaint and in the declarations of Plaintiff, Anthony, and Smith "are false" and he "neither knew of, nor encouraged anyone to harass or mistreat Plaintiff Kyle Richards in the ways alleged, or in any other way." (Campau Aff. at ¶ 6.)

### B. Plaintiff's Motion

Plaintiff argues that he is entitled to summary judgment because Campau "offers no evidence, no witnesses, and no declarations to support his denial" of Plaintiff's allegations, while Plaintiff "offers over 4 decl[a]rations, including his own testimony." (Mot. At Pg ID 155.) "Due

5

to Plaintiff[']s overwhelming evidence," he says, "there is no real dispute of facts, necessary for trial." (*Id.*)

Plaintiff also argues, apparently responding to defenses asserted by Campau in his answer, that Campau is not entitled to qualified immunity because his actions "went far beyond law enforcement" and "exceed[ed] the normal function" of an officer, and because Campau violated Plaintiff's clearly established constitutional rights. (*Id.* at Pg ID 152–54).

**C. Analysis**

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). The Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Cockrel*, 270 F.2d at 1056. "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Yet even if all the evidence before the court is in the moving party's favor, summary

judgment may not be appropriate. A party may not seize the opportunity for summary judgment by filing a motion before the other party can obtain and submit its evidence. Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Campau argues that the record currently before the Court "demonstrates the need for discovery during which the parties may pursue factual development of the record and marshal the available countervailing evidence for the court's eventual consideration in dispositive motions, if such are appropriate," rather than showing "lack of a genuine issue of material fact appropriate for jury resolution." (Dkt. 31, Opp. Mot. Summ. J. at Pg ID 192–93.) As required by Rule 56(d), Campau submits an affidavit describing with specificity the discovery that is required, including Plaintiff's deposition "to test the veracity of Plaintiff's claims; identify dates, times, and places of alleged unlawful acts; learn identity of potential witnesses; determine nature and extent of related injuries and damages, if any; judge demeanor and presentation, and determine utility of forensic psychological or psychiatric examination(s)." (Campau Aff. at ¶ 8(a).) Campau's motion for leave to take Plaintiff's deposition was recently granted. (Dkt. 40 at 7.)

The Court agrees that Plaintiff's summary judgment motion is premature. Discovery is

7

still ongoing. A grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery. *See White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir. 1994). For example, Plaintiff's motion relies heavily on his own declarations and allegations in the complaint, but Campau has not yet had the opportunity to test those assertions in a deposition. Summary judgment is improper at this stage.

Nor is it proper for the Court to address Plaintiff's arguments regarding qualified immunity. Campau asserted those defenses in his answer, but he has not yet moved to dismiss on those grounds. Although the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity, the defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Campau has not yet met his initial burden.

## III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment against Scott Campau (Dkt. 24) be DENIED.

## IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised

that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596–97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: September 5, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 5, 2013.

                                                    s/Jane Johnson
                                                    Deputy Clerk